**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

A. J. ADAMS,                              )
                                          )
                    Plaintiff,            )
                                          )       Case No. 1:07-cv-316-SJM
          v.                              )
                                          )
THE COUNTY OF ERIE,                       )
PENNSYLVANIA, et al.,                     )
                                          )
                    Defendants.           )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge,

Plaintiff, A.J. Adams, an attorney formerly employed by the Erie County Public

Defender's Office, has brought this civil action against the County and numerous

individuals for alleged violations of his federal constitutional rights, the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and state

contract and tort law arising out of the termination of his employment.  Presently

pending before me is the Plaintiff's Motion for Leave to File Proposed Second

Amended Complaint [29] and the Defendants' Motion for Partial Judgment on the

Pleadings [31].  I have jurisdiction over these matters pursuant to 28 U.S.C. § 1331,

1343, and 1367.  For the reasons that follow, the Defendants' motion will be granted

and the Plaintiff's motion will be granted in part and denied in part.


**I.  STANDARD OF REVIEW**

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a party may

amend its pleading once as a matter of course:  (A) before being served with a

responsive pleading or (B) within 20 days after serving the pleading if a responsive

pleading is not allowed and the action is not yet on the trial calendar.  Fed. R. Civ. P.

1

15(a)(1)(A) and (B).  Since neither of those circumstances pertain here, we are guided by Rule 15(a)(2), which allows amendment "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The rule further provides that leave should be "freely give[n] ... when justice so requires."  *Id*.  Mere delay in filing the amendment will not, alone, constitute grounds for denial unless the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party.  *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citation omitted).  Delay is "'undue'... when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend."  *Id*. (citations omitted).  In addition, leave to amend may be denied when the proposed amendment would be futile.  *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington Coat Factor*y *Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, in judging the futility of an amendment, we must apply the legal standard utilized under Fed. R. Civ. P. 12(b)(6) by accepting all pleaded allegations as true and viewing them in the light most favorable to the plaintiff.  *Winer Family Trust*, 503 F.3d at 331; *In re Alpharma Inc. Securities Litigation*, 372 F.3d 137, 153-54 (3d Cir. 2004); *In re Burlington Coat Factory*, 114 F.3d at 1434.

    In addition to the Plaintiff's motion for leave to file his proposed Second Amended Complaint, the Court has before it the Defendants' motion for partial judgment on the pleadings.  Pursuant to Fed. R. Civ. P. 12(c), a judgment will be granted if, based on the pleadings, the movant is entitled to judgment as a matter of law.  *DiCarlo v. St. Mary Hosp*., 530 F.3d 255, 262 (3d Cir. 2008) (citation omitted).  In making this determination, we accept the complaint's well-pleaded allegations as true and construe the complaint in the light most favorable to the nonmoving party; however, unsupported conclusory statements need not be accepted as true.  *Id*. at 262-63.

## II.  BACKGROUND[1]

Plaintiff A. J. Adams is an attorney at law residing in Erie, Pennsylvania.  (SAC ¶ 1.)  From February 1987 until January 13, 2006, he was employed by the Office of the Public Defender of Erie County, first as an assistant public defender and, since 1988, as First Assistant Public Defender.  (*Id*. at ¶¶ 2, 20.)

The Defendants in this action are the County of Erie and County Executive Mark DiVecchio, Erie County Public Defender Tony A. Logue, Attorney David Agresti, and John Doe.  For purposes of his RICO count, Plaintiff also names as Defendants Erie County Councilman Fiore Leone and Magisterial District Judge Dominick DiPaolo.

Defendant DiVecchio is a former Erie County Council member who ran in the 2005 general election as the Democratic candidate for County Executive.  (SAC at ¶ 26.)  DiVecchio became the Erie County Executive on or around November 15, 2005 when he was certified as the winner of that office by 117 votes over the Republican challenger.  (SAC ¶ 4.)  He was sworn into office on January 2, 2006.  (*Id*.)

Defendant Logue became the Public Defender on or around January 2, 2006 after being appointed to that office by Defendant DiVecchio.  (*Id*. at ¶ 7.)

Defendant Agresti is an attorney who supported DiVecchio in his 2005 campaign for County Executive and who served as DiVecchio's attorney relative to election and recount matters in that campaign.  (*Id*. at ¶¶ 9-10.)  In November of 2005, Defendant Agresti was appointed by DiVecchio to head up a transition team whose ostensible purpose was to identify and select policymaking and other personnel to serve in the DiVecchio administration.  (*Id*. at ¶¶ 10, 47.)

---

[1] The following background information is taken from the Plaintiff's proposed Second Amended Complaint ("SAC") [29-4].  Consistent with the relevant standards of review, discussed *supra*, we will accept these allegations as true and construe them in the light most favorable to the Plaintiff.

Defendant Leone is a Democratic member of the Erie County Council and has served on that body for the past thirty-one years. (*Id*. at ¶ 14.)  Defendant DiPaolo was at all relevant times a Magisterial District Judge for the Sixth Ward in Erie. (*Id*. at ¶ 13.)  Both Leone and DiPaolo are long-term Democratic elected officials representing the Sixth Ward of Erie and are supporters of Defendant Logue. (*Id*. at ¶ 27.)

The 2005 election for Erie County Council was extremely close, with the initial vote showing that the Republican candidate had won by six votes. (SAC ¶ 33.)  A recount then ensued in which Defendant DiVecchio was represented by Defendant Agresti. (*Id.*)  The only Election Board Attorney supervising the recount was Defendant Logue, acting in his then-capacity as Solicitor for both the Erie County Council and the Erie County Election Board. (*Id*. at ¶ 34.)  Following the recount, DiVecchio was declared the winner by a narrow margin.[2]

Prior to the 2005 general election, Defendant DiPaolo and Defendant DiVecchio had been involved in a disagreement whereby DiPaolo freely spoke ill of DiVecchio and had resolved never to speak to DiVecchio again. (SAC ¶ 29.)  DiVecchio performed more poorly than expected in the Sixth ward during the general election, and he believed that this was the result of DiPaolo frequently and publicly speaking negatively about him during the campaign. (*Id*. at ¶¶ 30-31.)

Following DiVecchio's successful election, Defendant Leone arranged a private reconciliation meeting, which was attended by DiVecchio, Logue, Agresti, DiPaolo and Leone. (*Id*. at ¶¶ 36-37.)  At the meeting, DiPaolo expressed his desire that Logue be appointed as Public Defender. (SAC ¶ 38.)  Even though DiVecchio had privately planned to appoint Logue to the position anyway, he initially indicated that he would

---

[2] At one point in his proposed Second Amended Complaint, Plaintiff contends that DiVecchio was certified as the winner by 117 votes. (SAC ¶ 4.)  Elsewhere, he alleges that the margin of victory was 121 votes. (SAC ¶ 35.)  For present purposes, the precise margin of victory is immaterial.

4

have to think about his decision.  (*Id*.)  At the conclusion of the meeting, DiVecchio

agreed that he would appoint Logue as Public Defender.  (*Id*. at ¶ 40.)  DiVecchio's

posturing over the decision in this manner was designed to create the appearance that

he was doing Leone and DiPaolo a favor by appointing Logue to the position of Public

Defender.  (*Id*. at ¶ 39.)

 In November of 2005, Defendant DiVecchio terminated the incumbent Public

Defender, Christine Konzel, and appointed Logue as Erie County Public Defender,

having declined to search or advertise for candidates for the position.  (SAC ¶ 42, 48.)

Logue was sworn in on January 2, 2006.  (*Id*. at ¶ 42.)

 Defendant Agresti, acting as manager of DiVecchio's transition committee, and

Logue then recommended the appointment of James A. Pitonyak to replace Plaintiff

A.J. Adams as the First Assistant Public Defender.  (SAC ¶ 50.)  Plaintiff Adams was

terminated, despite his employment with the public defender's office for some 18 years,

and despite the fact that he had performed well in that position, had no intention of

leaving, and was removable only for cause.  (*Id*.)

 Plaintiff did not engage in political activity on behalf of any candidate in the 2005

election.  (SAC ¶ 53.)  He had not been disciplined by any of his superiors, nor was his

work or attitude ever discussed or criticized by the Defendants or their representatives.

(*Id*. at ¶ 54.)  Nevertheless, Plaintiff's employment was terminated effective January 13,

2006 by letter dated December 30, 2005.  (*Id*. at ¶ 56.)

 In the same manner, fellow assistant public defenders Keith Clelland and

Andrew Weinraub – who, together with Plaintiff, represented the three highest paid

attorneys in the trial division of the public defender's office – were terminated without

cause.  (SAC ¶¶ 57, 60, 61.)  Like Plaintiff, Clelland and Weinraub had never been

disciplined by their superiors, were performing satisfactorily, and did not wish to leave

their positions.  (*Id*. at ¶¶ 58, 61.)  Moreover, none of the Defendants or their

representatives had discussed Clelland's or Weinraub's work or attitude with them or criticized their work.  (*Id*. at ¶ 58.)

After terminating Clelland and Weinraub, no search for candidates was made to fill those positions by the usual advertising, posting, and bid procedures.  (*Id*. at ¶ 59.) Upon the termination of Plaintiff Adams, Public Defender Konzel, and fellow assistant public defenders Clelland and Weinraub, those positions became open for replacement by persons politically aligned with Defendants DiVecchio, Agresti, Logue, DiPaolo and Leone.  (*Id*. at ¶ 60.)

DiVecchio also terminated three attorneys employed by the Office of Children and Youth who had not supported his campaign.  (SAC ¶ 64.)  Defendants made no search for candidates for these openings using the normal posting and bid procedures; instead, DiVecchio appointed his own supporters, including Defendant Agresti, to fill these openings.  (*Id*. at ¶¶ 64-66.)

Similarly, on December 16, 2005, DiVecchio discharged facilities manager Edward Vereb, giving no reason for the discharge.  (SAC ¶ 67.)  Vereb, who had not supported DiVecchio's campaign, was replaced by Michael Krause, who had been one of DiVecchio's fundraisers.  (*Id*.)

### III.  DISCUSSION

#### A.

The primary dispute relative to the Plaintiff's proposed Second Amended Complaint ("SAC") centers on the Plaintiff's RICO claim in Count II.  During the February 3, 2009 argument relative to Plaintiff's proposed First Amended Complaint, I indicated that the Plaintiff's proposed RICO count suffered from a number of deficiencies.  Specifically, I noted there was no allegation in the proposed First Amended Complaint indicating which provision(s) of 18 U.S.C. § 1962 was/were

violated and by which Defendant(s).  Moreover, I viewed the allegations relative to the predicate acts of mail fraud as insufficient in that they had not been pled with the requisite specificity required under Fed. R. Civ. P. 9(b).  In addition, I found that the FAC failed to alleged the existence of an enterprise distinct from the Defendants themselves and failed to allege how the Plaintiff had been injured as a result of the unlawful conduct.  (*See* Tr. from 2/3/09 Hearing on Pl.'s Mot. to Amend Complaint [28] at pp. 83-85.)  Although I did not grant the Plaintiff leave to amend his RICO claim as set forth in the First Amended Complaint, I gave him leave to plead the claim over.

Defendants now contend that the SAC's proposed RICO count – though more elaborate – suffers from the same deficiencies as before.  In particular, they contend that the Plaintiff has failed to plead four requisite elements of a RICO claim:  (i) the commission of at least two predicate acts; (ii) a "pattern" of racketeering activity, (iii) a viable RICO "enterprise" and (iv) injury to the Plaintiff by reason of the § 1962 violation.  (*See* Def.s' Response to Pl.'s Mot. for Leave to File Proposed Second Amended Complaint [30] at p. 5.)

Of the four substantive RICO violations outlined in 18 U.S.C.§ 1962(a)-(d), only two have been cited by the Plaintiff as relevant to his claim:

> **(b)**  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> ***
>
> **(d)**  It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(b) and (d).  (*See* SAC ¶¶ 17-18, 89 (alleging that the Defendants' actions violated 18 U.S.C.A. § 1962 (b) and (d).)  Each of these provisions will be addressed separately.

7

1.      **Section 1962(b)**

To establish a claim under § 1962(b), the Plaintiff must allege an injury from the Defendants' acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts.  *Lightening Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993).  *See also* 18 U.S.C. § 1964(c) (creating a private right of action for "[a]ny person injured in his business or property by reason of a violation of Section 1962").  "Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise."  *Id.*  (quoting *Casper v. Paine Webber Group, Inc.*, 787 F. Supp. 1480, 1494 (D.N.J. 1992)).  Merely repeating the same injures that resulted from the alleged acts of racketeering is not enough; the injury must be the result of the Defendants' actions in acquiring or maintaining control of the enterprise.  *Flood v. Makowski*, No. Civ. A. 3:CV-03-1803, 2004 WL 1908221 at *29 (M.D. Pa. Aug. 24, 2004) (citing *Lightning Lube, Inc.*, 4 F.3d at 1191).  "The fact that a Defendant could not have harmed the plaintiff 'but for' the fact that he controlled the enterprise does not satisfy this test."  *Flood*, 2004 WL 1908221 at *29 (citing *Casper v. Webber Group, Inc.*, 787 F. Supp. 1480, 1495 (D.N.J. 1992)).

In addition, the Plaintiff must establish that the Defendants' interest or control of the RICO enterprise is the result of racketeering.  *Lightening Lube, Inc.* 4 F.3d at 1190. (citation omitted).  Thus, the Plaintiff must establish a nexus between the interest and the alleged racketeering activities, not merely that the Defendants engaged in racketeering and have an otherwise legitimate interest in the enterprise.  *Id*.

"Racketeering activity" for purposes of RICO is defined in terms of certain crimes chargeable under state law and certain crimes indictable under federal law.  *See* 18 U.S.C.A. § 1961(1).  Relevant state law racketeering includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in

obscene matter, or dealing in a controlled substance or listed chemical ...which is chargeable under State law and punishable by imprisonment for more than one year." *Id*. at § 1961(1)(A).  Subsection (B) defines racketeering in terms of acts which are indictable under a host of federal criminal statutes including, *e.g.*, 18 U.S.C. § 1341 (relating to mail fraud), § 1343 (relating to wire fraud), and § 1029 (relating to fraud and related activity in connection with access devices).  18 U.S.C. §1961(1)(B).

The Plaintiff's proposed RICO claim, set forth in ¶¶ 88-177 of the Second Amended Complaint, contains a number of somewhat sprawling and disjointed allegations delineating each Defendant's alleged misconduct.  Yet despite the volume of RICO-related allegations, I find that the claim suffers from a number of deficiencies, which will be discussed individually.

(i)

Plaintiff's proposed Second Amended Complaint is chock full of allegations charging each Defendant with various violations of state and federal criminal laws; however, many of the alleged misdeeds are either insufficiently pled or do not qualify as acts of "racketeering" for purposes of RICO.  For example, the SAC vaguely alleges a claim of theft of honest services in paragraph 164, which states:

> The citizens of Erie County have been defrauded of their right to the honest administration of government and specifically to the good faith administration of the hiring, retention and termination process for County employees.  The citizens and the county have been deprived of more experienced and properly performing employees who have been unnecessarily replaced by less experienced employee[s].

(SAC ¶ 164.)  Assuming only for the sake of argument that this allegation could suffice to establish a theft of the County citizens' intangible right to honest services, it is an insufficient predicate for the Plaintiff's RICO claim.  Section 1346 of Title 18 of the United States Code, which defines "scheme or artifice to defraud" as including a scheme to deprive another of the intangible right of honest services, is not a stand-

alone act of racketeering for purposes of RICO.  Moreover, assuming it is possible to allege "honest services" mail or wire fraud as a predicate act of racketeering under RICO, there are no allegations in the SAC establishing how DiVecchio or any other Defendant accomplished this "honest services" scheme through specific acts of mail or wire fraud.  In his brief in support of his motion to amend, Plaintiff asserts – in conclusory fashion – that "[t]he defendants have conspired from 2005 to date with each other to devise and participate in a scheme to defraud the County of Erie and its people of the honest services of the named defendants and in furtherance of which the mails and interstate wire communications were used in violation of 18 U.S.C. §§ 1341, 1343 and 1346.  (Pl.'s Br. in Supp. of Mot. to Amend. [32] at p. 7.)  This type of conclusory allegation, even if it appeared in the proposed Second Amended Complaint (which it does not), is patently insufficient to establish a viable claim of honest services mail or wire fraud.

Plaintiff's proposed SAC also alleges numerous violations of the Pennsylvania Criminal Code which do not qualify as "racketeering activity" under RICO.  Although acts of robbery chargeable under state law are included within RICO's definition of "racketeering activity," theft is not.  18 U.S.C.A. § 1961(1)(A).  Thus, Plaintiff's allegations in SAC ¶¶ 99 and 101 that Defendant DiVecchio committed Theft by Failure to Make Required Disposition of Funds Received (in violation of 18 Pa. C.S.A. § 3927), Theft by Unlawful Taking or Disposition (in violation of 18 Pa. C.S.A. § 3921), and Misapplication of Entrusted Property (in violation of 18 Pa. C.S.A. § 4113) are insufficient to establish acts of racketeering under RICO.

In similar fashion, the SAC asserts numerous violations of the Pennsylvania Election Code on the part of DiVecchio which do not constitute acts of racketeering for purposes of RICO.  (*See, e.g.*, SAC ¶¶ 108 and 170 (alleging violation of 25 P.S. § 3242(c)); ¶¶ 109 and 171 (alleging violation of 25 P.S. § 3244(c); ¶¶ 110-111, 172-73

(alleging various violations of 25 P.S. § 3246); ¶¶ 113 and 175 (alleging violation of 25 P.S. § 3540); ¶¶ 114 and 176 (alleging violation of 25 P.S. § 3502) .)  Elsewhere, the Plaintiff alleges that DiVecchio violated 25 P.S. § 3539, "Bribery at elections," by "accepting money and other valuable things for him to provide or assist in providing offices and employment."  (SAC ¶¶ 112, 174.)  Although bribery can constitute racketeering activity under RICO, this particular Election Code violation is facially inapplicable based on the Plaintiff's own allegations, because the statute concerns only bribery undertaken with the intent to influence a person's vote "at any primary or election," 25 P.S. § 3539 – misconduct which is not alleged here.  Thus, none of violations of the Pennsylvania Election Code alleged in the proposed Second Amended Complaint count as "racketeering activity" for purposes of the Plaintiff's RICO count.

(ii)

With respect to the alleged misconduct that might qualify as "racketeering activity" under RICO, 18 U.S.C. § 1961(1), Plaintiff's allegations either fail to establish a substantive § 1962 violation or fail to establish that the Plaintiff suffered an injury as a result of that violation.  *See* 18 U.S.C.A. § 1964(c) (stating, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section 1962" may file a federal civil action for treble damages, costs, and attorney's fees).

For example, Plaintiff purports to invoke 18 U.S.C.A. § 1341 (mail fraud), §1343 (wire fraud), and § 1029 (fraud and related activity in connection with access devices) as a basis to establish federal predicate acts of racketeering by alleging that DiVecchio used or invested income from a pattern of racketeering (i.e., mail and wire fraud) to maintain his business at DiVecchio Catering.  More specifically, Plaintiff alleges in ¶¶ 99-102 of the SAC that DiVecchio used mail or wire communications to solicit political contributions, either by "macing" certain county employees to contribute $500.00 or

more to his campaign or by obtaining campaign donations through one of two political organizations (i.e., Friends of Mark DiVecchio and the Committee To Elect DiVecchio), then defrauded his donors by diverting a portion of these political funds to his catering business.  (SAC ¶¶ 99-102.)  Assuming (as we apparently must) that DiVecchio Catering is the relevant RICO "enterprise," the allegations fail to establish that DiVecchio acquired or maintained an interest in DiVecchio catering as a result of racketeering activity, as opposed to his having an otherwise legitimate interest in the business.  *See Lightening Lube*, 4 F.3d at 1191; § 1962(b).  Moreover, no facts are alleged that, if proved, would establish injury to the Plaintiff personally as a result of DiVecchio's interest in his own catering business.  *Lightening Lube*, 4 F.3d at 1191; § 1964(c).[3]  Plaintiff fares no better if the relevant enterprises are "Friends of Mark DiVecchio" and "the Committee to Elect DiVecchio," as he has not alleged any injury resulting from DiVecchio's interest or control of those enterprises.

With regard to the host of state law violations that are alleged in the Second Amended Complaint, Plaintiff acknowledges in his brief that the only relevant crimes which could possibly constitute racketeering activity in the context of this case are extortion and bribery.  (*See*  Pl.'s Br. in Supp. of Mot. to Amend [32] at p. 4.)  Here again, however, the Plaintiff's allegations of bribery and extortion fail to establish a viable basis for recovery under RICO.  To understand why, we must first consider Plaintiff's theory relative to the alleged acts of racketeering.

Primarily, the Plaintiff contends that the various Defendants – but particularly DiVecchio, Leone and DiPaolo – engaged in bribery in violation of 18 Pa. C.S.A.

---

[3] For the same reason, there is no viable cause of action even if we construe this claim as an alleged violation of 18 U.S.C. § 1962(a) (making it unlawful for "any person who has received any income derived ... from a pattern of racketeering activity" to "use or invest  ... any part of such income" in "operation of" any "enterprise" engaged in or affecting interstate commerce).  Either way, the Plaintiff has failed to allege injury to his property or business as a result of the substantive violation.  *See* § 1964(c).

§ 4701("Bribery in official and political matters") in connection with the reconciliation luncheon arranged by Leone following DiVecchio's win in the general election.  During that meeting, Plaintiff claims, DiVecchio agreed to appoint Logue as the Public Defender as Leone and DiPaolo desired and, in exchange, Leone and DiPaolo promised DiVecchio their future political support.  Plaintiff further alleges that DiVecchio – either individually or acting in complicity with the other Defendants – engaged in official oppression in violation of 18 Pa. C.S.A. § 5301[4] by "macing" certain county employees (i.e., pressuring them to contribute to his political campaign) and/or maintained a bribery system whereby those who contributed to DiVecchio's campaign either retained or obtained (non-union) county jobs, while those who did not lost their (non-union) jobs.

Assuming for the moment (without deciding) that these alleged activities could constitute a pattern of racketeering, they fail to establish an actionable § 1962(b) claim. To violate subsection (b), the Defendant must acquire an interest in the subject enterprise "through a pattern of racketeering." 18 U.S.C.A. § 1962(b).  It therefore becomes incumbent upon the Plaintiff as a preliminary matter to identify the relevant "enterprise," but it is not clear from the Plaintiff's papers what that enterprise is.

---

[4] That statute provides as follows:

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

> (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

18 Pa. C.S.A. § 5301.  It appears that DiVecchio's alleged violation of this statute forms the basis of the Plaintiff's claim that DiVecchio engaged in "extortion."

13

Whereas the Plaintiff's proposed First Amended Complaint failed to identify a RICO "enterprise," his proposed Second Amended Complaint purports to identify several without specifically alleging how these enterprises are relevant to his § 1962(b) claim. Paragraphs 90-94 of the SAC allege that the various "enterprises" include the County of Erie, the Public Defender's Office of Erie County, the Office of Children and Youth, the County Maintenance Department, DiVecchio Catering, Friends of DiVecchio and the Committee to Elect DiVecchio, the Agresti Law Firm, and the law firm of Agresti, Morton & Moore LLC.  Although not a legal entity, Defendants DiVecchio, Agresti, Logue, Leone, DiPaolo and two other individuals – Attorney John Moore and Art Oligeri (formerly a contender for the Republican County Executive candidacy) – are alleged to be associated in fact so as to constitute an "enterprise" for purposes of RICO.  (SAC ¶ 95.)

Identifying the relevant enterprise is crucial because, pursuant to § 1962(b) and § 1964(c), the Plaintiff must sufficiently allege an injury resulting from the Defendants' acquisition of an interest in the RICO enterprise.  Here, the Defendant's alleged injury is the loss of his job as First Assistant Public Defender which, he claims, was the result of his not having contributed to DiVecchio's 2005 campaign for County Executive.  Giving the Plaintiff the benefit of the doubt, the only entity which could logically serve as a relevant "enterprise" for purpose of his § 1962(b) claim is the Public Defender's Office because, as to the other alleged enterprises, the proposed Second Amended Complaint fails to allege any facts which would establish that the Plaintiff was personally injured as a result of the Defendants' acquiring or maintaining an interest in those enterprises.  For example, nothing in the Second Amended Complaint could support a finding that the Plaintiff was injured as a result of the Defendants acquiring an interest in/ or control over the Office of Children and Youth, the County Maintenance Department, DiVecchio Catering, Friends of DiVecchio, the Committee to Elect

DiVecchio, the Agresti Law Firm, or the law firm of Agresti, Morton & Moore LLC.  Even if it were alleged that the Defendants "could not have harmed the Plaintiff 'but for' the fact that [they] controlled" some of these enterprises, such an allegation would be legally insufficient.  *See Flood*, 2004 WL 1908221 at *29 (citing *Casper v. Webber Group, Inc.*, 787 F. Supp. 1480, 1495 (D.N.J. 1992)).

However, even if the Public Defender's Office is viewed as the relevant "enterprise," the proposed SAC still fails to allege a viable § 1962(b) claim.  Although the proposed Second Amended Complaint alleges that DiPaolo and Leone attempted to bribe DiVecchio with the aim of having Tony Logue appointed as the Public Defender, such conduct – even if true – does not establish that Leone or DiPaolo personally acquired an interest in or control over the Public Defender's Office.  Even if they had, their alleged misconduct fails to establish any "acquisition injury" to the Plaintiff personally; it is not sufficient, for example, for the Plaintiff to claim that he would not have lost his job as First Assistant Public Defender but for Logue's appointment. *See Flood*, 2004 WL 1908221 at *29  (the plaintiff's claim that a defendant could not have harmed the injury 'but for' the fact that he controlled the enterprise is insufficient) (citing *Casper v. Webber Group, Inc.*, 787 F. Supp. 1480, 1495 (D.N.J. 1992)).

As for the other named Defendants, the SAC fails to allege facts which, if proven, would establish that these Defendants obtained their interest in or control over the Public Defender's Office as a result of a "pattern of racketeering activity or through collection of an unlawful debt."  *See* § 1962(b).  DiVecchio maintains control over the Public Defenders Office by virtue of his election to the office of County Executive, and Defendant Logue maintains more immediate control over the Public Defender's Office by virtue of his appointment to the position of Public Defender – an appointment which, as the proposed Second Amended Complaint itself alleges, DiVecchio planned to make irrespective of Leone's or DiPaolo's wishes.  To establish a § 1962(b) violation, "it is not

15

enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise." *Lightening Lube*, 4 F.3d at 1190; *Dow Chemical Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 698 (D. Del. 1998).[5]  Moreover, to the extent Logue is alleged to have gained control over the Public Defenders Office by virtue of racketeering acts, they were not his own acts of alleged racketeering, but the alleged acts of DiPaolo and Leone.  (*See* SAC ¶¶ 117-18.)[6]  In sum, the SAC does not allege that either Logue or DiVecchio acquired control over the Public Defenders Office "through a pattern of racketeering activity."

Plaintiff's claim fares no better to the extent he is alleging that he was injured as a result of Defendant Agresti acquiring an interest in or control over the Public Defender's Office.  Assuming this is the Plaintiff's theory, the SAC again fails to allege that Agresti acquired such interest or control through a distinct "pattern of racketeering"; rather, the SAC alleges only that Agresti "provided pecuniary and other benefits to the Defendant DiVecchio," or "conspired to provide" such benefits, as consideration for his ability to, essentially, improperly influence personnel decisions within the Office of the Public Defender and other county offices, including securing various county positions for himself.  (SAC ¶¶ 123-126.)  Such vague averments are insufficient to establish that Agresti acquired an interest in or control over the Public Defenders Office "through a

--------------------

[5] For the same reason, the Plaintiff's § 1962(b) claim fails if the relevant "enterprise" is the County of Erie.  The SAC provides an insufficient factual basis from which one could conclude that DiVecchio assumed control over that "enterprise" as a result of racketeering activity.

[6] As it relates to Logue's own conduct in securing the appointment to the position of Public Defender, the SAC alleges only that "Mr. Logue had long before 2005 expressed his desire to be the Public Defender of Erie County and he worked for and contributed to Mr. DiVecchio's 2005 campaign with the understanding that if Mr. DiVecchio won he would appoint Mr. Logue as Public Defender."  (SAC ¶ 117.)  This is insufficient to establish that Logue acquired control over the Public Defenders Office "through a pattern of racketeering activity."  § 1962(b).

pattern of racketeering activity."  The RICO statute defines a "pattern of racketeering activity" as involving at least two acts of racketeering activity within a ten-year period. § 1961(1).  Further, "to prove a pattern of racketeering activity a plaintiff...must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Continuity, in this context, is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id*. at 241-42.  As these concepts suggest, "'Congress was concerned in RICO with long-term criminal conduct,' not 'predicate acts extending over a few weeks or months and threatening no future criminal conduct.'"  *McMahon v. Spano*, No. Civ. A. 96-3957, 1996 WL 627590 at *4 (E.D. Pa. Oct. 29, 1996) (quoting *H.J. Inc.*, 492 U.S. at 242).  Here, the averment that Agresti "provided pecuniary and other benefits" to DiVecchio or "conspired to provide" such benefits is insufficient to establish that Agresti acquired an interest in or control over the Public Defender's Office through a "pattern of racketeering activity."

Assuming, in the alternative, that the relevant predicate racketeering activity is Agresti's alleged complicity in a "pay to play" scheme whereby only individuals who donated to DiVecchio's campaign could retain or obtain nonunion jobs in the Public Defender's Office, then the RICO claim fails because there is no allegation of injury to the Plaintiff independent of the underlying racketeering activity.  *See Lightening Lube*, 4 F.3d at 1191 ("a well-plead complaint under section 1962(b)... requires the assertion of an injury independent from that caused by the pattern of racketeering.")  Here, Plaintiff essentially claims that he lost his job because, unlike those individuals who successfully competed for nonunion positions, he did not contribute to DiVecchio's campaign.  The Plaintiff's alleged injury is therefore a direct result of the alleged "pay-to-play" bribery scheme; no additional injury has been pled which is independent of that predicate

17

racketeering activity.

In a final attempt to demonstrate racketeering activity, Plaintiff alleges that, through various transactions, a $5,000.00 fee was provided by the DiVecchio camp to Art Oligeri, a former Republican candidate for County Executive who, after losing in the primary, later endorsed DiVecchio in the general election.  Plaintiff claims that this payment to Oligeri, which was intended to help pay off Oligeri's campaign debt, and Oligeri's reciprocal support of DiVecchio in the general election, constituted an act of bribery in official political matters in violation of 18 Pa. C.S.A. § 4701.

Once again, assuming only for the sake of argument that these allegations establish racketeering activity for purposes of RICO, no viable § 1962(b) claim has been made.  No RICO enterprise is identified in connection with this alleged racketeering activity, nor has the Plaintiff alleged any injury to his business or property resulting from it.  In fact, Oligeri is not named in the proposed Second Amended Complaint as a Defendant, RICO or otherwise.

Thus, for all of the reasons discussed above, Plaintiff's proposed Second Amended Complaint fails to establish a viable claim under 18 U.S.C. § 1962(b).

**2.**    **Section 1962(d)**

Plaintiff has also alleged a violation of § 1962(d), which makes it unlawful for "any person to conspire to violation any of the provisions of subsections (a), (b), or (c)" of § 1962.  "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightening Lube*, 4 F.3d at 1191 (citing *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 182 (E.D. Pa. 1988).  Because Plaintiff has not alleged a viable substantive violation under § 1962(a), (b) or (c), his § 1962(d) claim must also fail.  *Id.*

### 3.     Plaintiff's Original RICO Claim

Finally, by way of clarification, Defendants have filed a motion for partial judgment on the pleadings relative to the Plaintiff's RICO claim as set forth in the original complaint.  Defendants contend that, if the Plaintiff is denied leave to amend his RICO claim as set forth in the proposed Second Amended Complaint, then the original RICO claim should be dismissed under Rule 12(c) as also legally insufficient.

I agree.  The Plaintiff's original RICO claim is far less detailed than the claim set forth in the SAC, but it basically sets forth some of the same theories discussed above. In essence, the original complaint alleges that Agresti, Logue and unnamed John Doe Defendants "provided pecuniary benefit" or conspired to provide such benefit to DiVecchio as consideration for DiVecchio placing them or their allies into positions at the Public Defenders Office at the expense of other former employees.  (Complaint [1] at ¶¶ 61-64.)  Notably, Plaintiff's original RICO claim fails to identify which substantive violation is being alleged under § 1962.  Accordingly, I will assume for present purposes that § 1962(b) provides the relevant theory.

Insofar as this claim is directed against DiVecchio, it fails for the reasons set forth above – i.e., among other things, the allegations fail to establish that DiVecchio obtained an interest or control over the Public Defender's Office (and/or the County of Erie) as a result of racketeering activity.  Insofar as the claim is directed against Logue and/or Agresti, the allegations are insufficient to establish that they acquired an interest in or control over the relevant enterprise "through a pattern of racketeering."  The mere allegation that Logue and Agresti individually provided, or conspired to provide, "pecuniary benefit" to DiVecchio fails to establish a pattern of racketeering activity for purposes of § 1962(b) for the reasons previously discussed.  Moreover, insofar as the complaint alleges that the consideration which Logue and Agresti received for their alleged bribery of DiVecchio was the placement of themselves and their allies into

positions of employment at the Public Defenders Office, the complaint fails to allege an
"acquisition injury" to the Plaintiff which is independent of the injury caused by the
predicate racketeering activity.  Accordingly, the Defendants' motion for partial
judgment on the pleadings will be granted and the Plaintiff's original RICO claim will be
dismissed.

B.

As for the other counts contained in the proposed Second Amended Complaint,
the Defendants object that the Plaintiff has improperly pled Fiore Leone and Dominick
DiPaolo as Defendants, despite this Court's previous determination that such claims
would be time-barred as against those individuals.

Defendants Leone and DiPaolo were included in the proposed Second Amended
Complaint primarily because they were named in the Plaintiff's proposed RICO count.
However, Plaintiff is not being granted leave to amend his complaint so as to retain that
cause of action.  As for the remaining causes of action being pursued by the Plaintiff –
i.e., his § 1983 claim and his state law claims for breach of contract and tortious
interference with a contract, I have previously ruled that such claims are untimely as
against Defendants Leone and DiPaolo.  Accordingly, those individuals can not be
named as Defendants in any of the claims that are proceeding at this juncture.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's proposed amendment to his RICO
count as set forth in the Second Amended Complaint is futile in that it fails to state a
cognizable claim for relief that could withstand a motion under Fed. R. Civ. P. 12(b)(6)
and, therefore, leave to amend that count will be denied.  Plaintiff's motion for leave to
amend is further denied to the extent any of his remaining non-RICO claims purport to
name either Fiore Leone or Dominick DiPaolo as Defendants.  Plaintiff's motion for

leave to amend will be granted insofar as he seeks to withdraw his claim under 42 U.S.C. § 1985.  Plaintiff will be required to file, within twenty days of the date of this Memorandum Opinion and Order, an amended complaint which comports with the foregoing directives.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

A. J. ADAMS,                              )
                                          )
          Plaintiff,                      )
                                          )          Case No. 1:07-cv-316-SJM
     v.                                   )
                                          )
THE COUNTY OF ERIE,                       )
PENNSYLVANIA, et al.,                     )
                                          )
          Defendants.                     )

## O R D E R

AND NOW, *to wit*, this 23rd day of September, 2009, for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED THAT the Plaintiff's Motion [29] for Leave to File Proposed Second Amended Complaint is GRANTED in part and DENIED in part as follows:

1.  Said motion is GRANTED insofar as the Plaintiff seeks leave to withdraw his claim under 42 U.S.C. § 1985; and

2.  Said motion is DENIED insofar as the Plaintiff seeks leave to amend his RICO claim in Count 2 and is further DENIED to the extent that any of the Plaintiff's remaining claims purport to name either Fiore Leone or Dominick DiPaolo as Defendants.

IT IS FURTHER ORDERED that Defendants' Motion [31] for Partial Judgment on the Pleadings is GRANTED.

IT IS FURTHER ORDERED that, within twenty (20) days of the date of this Memorandum Opinion and Order, the Plaintiff shall file an amended complaint which comports with the foregoing directives.

                                   s/     Sean J. McLaughlin
                                          _____

                                          Sean J. McLaughlin
                                          United States District Judge

cm:  All counsel of record.

22