IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.J. ADAMS,  )  )  Plaintiff, ) | Case No. 1:07-cv-316-SJM |
| ) v. ) ) THE COUNTY OF ERIE,    ) PENNSYLVANIA, *et al*,   ) ) Defendants.  ) | |

### MEMORANDUM OPINION

Pending before this Court is Plaintiff's pro se "Omnibus Motion for Relief" [93]. For the reasons that follow, the motion will be denied.

### I.   BACKGROUND

Following his termination from employment as the First Assistant Public Defender for Erie County, Plaintiff A.J. Adams filed this §1983 action against the County of Erie, Pennsylvania, Mark A. DiVecchio, Anthony A. Logue, and David C. Agresti. Broadly speaking, Adams alleged that his First Amendment right to be politically inactive was violated when he was fired as the result of "pay-to-play" scheme whereby employment decisions for certain county job positions were based upon the applicant's level of support for DiVecchio during DiVecchio's 2005 campaign to become County Executive. Adams' complaint also asserted a §1983 claim premised on the alleged violation of his federal due process rights, claims under 42 U.S.C. § 1985 and the federal RICO statute, 18 U.S.C. §1961 et seq., and claims arising under Pennsylvania contract and tort law.

By memorandum opinion and order entered on September 23, 2009 [34], I granted the Defendants' motion for judgment on the pleadings relative to Adams' RICO claim and denied Adams' motion for leave to amend, as I viewed the proposed amendments to the RICO claim insufficient to withstand a Rule 12(b)(6) dismissal. Adams' remaining claims were subsequently either abandoned or withdrawn, except for his §1983 claim premised on the alleged violation of his First Amendment right to be politically inactive. (See Tr. of Oral Argument held on 7/15/10 [81] at pp. 49-50.)

On September 30, 2011, this Court granted the Defendants' motion for summary judgment relative to Adams' sole remaining §1983 claim. After reviewing the entirety of the record, I concluded that that the evidence, even when construed most favorably to Adams, would not permit a jury to reasonably conclude that the relevant decision-makers knew of Adams' political status or were motivated by it in the course of making their decision to fire him from his job. *See Adams v. County of Erie,* Case No. 1:07-cv-316-SJM, 2011 WL 4574784 (W.D. Pa. Sept. 30, 2011).

Several days later, Adams filed a motion for an expedited hearing [85], claiming that his counsel, Willam D. Taggart, Esq., had failed to file materials which Adams believed would have resulted in the reinstatement of his formerly dismissed RICO claim and the denial of summary judgment as to all of his other state and federal claims. It was evident from this filing that a disagreement had arisen between Adams and his attorney concerning the manner in which his case had been prosecuted and the scope of their professional relationship. In his motion, Adams sought an expedited hearing for the purpose of resolving whether the attorney-client contract was still in effect and,

pending that determination, an order requiring Mr. Taggart either to continue representing Adams or to pay for representation by other counsel.

On October 6, 2011, this Court denied Adams' motion on the ground that it lacked ancillary jurisdiction to address the attorney-client dispute since the case had already been closed. Moreover, the Court found no basis in Adams' motion for reconsideration of its prior summary judgment ruling. (See Mem. Order dated 10/6/11 [86].)

The Court subsequently vacated this order on November 23, 2011 having concluded, on further reflection, that ancillary jurisdiction did exist. (See Mem. Order dated 11/23/11 [93].) The Court expressly noted in its order that it was not concluding that an evidentiary hearing was warranted concerning Adams' alleged conflict with his attorney. Rather, based on the submissions of record, we found it to be "clear that there has been a break-down in communication between Adams and his counsel such that good cause exist[ed] justifying Mr. Taggart's withdrawal from the case." (Id. at p. 4.) Accordingly, the Court granted Mr. Taggart's motion for leave to withdraw his appearance as Adam's counsel and directed Mr. Taggart to surrender any papers and property to which Adams might be entitled pursuant to Rule 1.16(d) of the Pennsylvania Rules of Professional Conduct.

In the meantime, Adams had filed the pending "Omnibus Motion for Relief" [87]. Under the terms of my November 23, 2011 Memorandum Order, Adams was given an opportunity to supplement his omnibus motion following his review of materials relinquished by Mr. Taggart. Adams has since supplemented his motion [94] and Defendants have filed their brief in opposition [95].

## II.     THE PENDING MOTION

Having reviewed Adams' submissions in their entirety, I find that his motion, although generically captioned an "omnibus motion," it is best construed as a motion under Rule 60(b) for relief from the final judgment and orders entered in this case. Specifically, Adams seeks reinstatement of his claims under §1983, RICO, and Pennsylvania state contract law.

Adams' extensive materials in support of his "omnibus motion" provide a sprawling narrative about his relationship with Mr. Taggart, the instant federal civil litigation, his efforts to have the Defendants criminally prosecuted, and his own investigation into the 2005 election which led him to author a publication entitled "Erie County's Dirty Little Secrets."  Broadly speaking, Adams contends that his federal claims should be reinstated because they were incompetently prosecuted by Mr. Taggart, resulting in this Court's dismissal of the RICO claims and entry of summary judgment in favor of the Defendants on Adams' First Amendment claim.  Adams asserts that his remaining claims under state and federal law were improperly conceded or abandoned by Mr. Taggart without his consent.

Essentially, Adams states that he mistakenly placed blind trust in his lawyer, whom (he claims) proved to be incompetent both mentally and professionally.[1]  Adams asserts that, contrary to his own wishes, Mr. Taggart failed to use information which Adams provided that was supportive of the RICO claims and also failed to seek timely reconsideration of the RICO counts after they were dismissed.  Adams believes that, had Mr. Taggart done so, the RICO counts would have been reinstated and would have

---

[1] In fact, it appears that Adams has filed a grievance against Mr. Taggart with the Pennsylvania Displinary Board, which remains pending.

resulted in triable issues of fact. Adams claims he believed, based on representations from Mr. Taggart, that his case was going well and that he would achieve a substantial recovery. Adams also represents that he finally undertook his own study of RICO law and in-depth investigation of circumstances surrounding DiVecchio's campaign and hiring decisions and has uncovered information which he believes supports the RICO claims. On the basis of his experience as a criminal defense attorney and the investigation he undertook concerning DiVecchio's 2005 campaign for County Executive, Adams purports to offer an expert opinion supportive of his RICO claims.

Adams also appears to believe that that he had a contractual right to employment as Erie County's First Assistant Public Defender by virtue of the Supreme Court's decision in *Branti v. Finkel,* 455 U.S. 507 (1980). Further, Adams appears to believe that his termination from employment, in violation of this alleged contractual right, established the basis of a §1983 claim for the violation of his federal due process and First Amendment rights.

### III.   DISCUSSION

Where a final judgment or order has been entered in a case, Rule 60(b) of the Federal Rules of Civil Procedure provides a limited avenue of relief based on one or more of the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not
       have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic),
       misrepresentation, or misconduct by an opposing party,

> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The time for asserting a Rule 60(b) motion is limited. Pursuant to subsection (c)(1), a motion must be made within a "reasonable time, -- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

"The decision to grant or deny relief pursuant to Rule 60(b) lies in the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir.1981). Importantly, though, the jurisprudence from this circuit makes clear that relief under Rule 60(b) is available only in rare and extraordinary circumstances. The Rule "does not confer upon the district courts a standardless residual of discretionary power to set aside judgments." *Moolenaar v. Government of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir.1987), and relief should be afforded only where the "overriding interest in the finality and repose of judgments may properly be overcome." *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir.1987) (quoting *Martinez-McBean v. Government of the Virgin Islands*, 562 F.2d 908, 913 (3d Cir.1977)). "The remedy provided by Rule 60(b) is extraordinary, and [only] special circumstances may justify granting relief under it." *Moolenaar*, 822 F.2d at 1346. Mere "legal error does not by itself warrant the application of Rule 60(b),"

*Pridgen v. Shannon,* 380 F.3d 721, 728 (3d Cir. 2004) (citing *Martinez-McBean* at 912), and, thus, Rule 60(b) may not be used as a substitute for appeal. *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir.1988), *U.S. v. Enigwe*, 320 F. Supp. 2d 301, 306 (E.D. Pa.2004).

Because Adams has failed to formally invoke Rule 60, the Court must determine for itself which prong(s) of the rule most appropriately apply to this case. Upon review of Adams' omnibus motion and supporting papers, I conclude that the only arguably relevant subsections are (1), (2), and (6).[2] I will address each provision accordingly.

### (A) Mistake, Inadvertence, Surprise, Excusable Neglect

In order to obtain relief under Rule 60(b)(1), a movant must submit his motion no more than a year after the entry of the judgment or order being challenged. Fed. R. Civ. P. 60(c)(1). To the extent Adams is seeking relief from the Court's order entering judgment on the pleadings and precluding further amendment of Adams' RICO claims, his motion is untimely. The relevant court order was entered on September 23, 2009 and Adams did not pursue relief until more than two years later.

Beyond this impediment, however, Adams has failed to demonstrate the type of mistake, surprise or excusable neglect as would justify relief under Rule 60(b). Federal courts generally construe averments of attorney malpractice as insufficient to justify relief under Rule 60(b)(1). *See, e.g., Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir.2006) ("Rule 60(b)(1) is not intended to remedy the effects of a

---

[2] To the extent Adams' motion has alleged fraud, misrepresentation or misconduct, it is on the part of his attorney, so Rule 60(b)(3) does not apply. See Fed. R. Civ. P. 60(b)(3) (allowing for relief where movant demonstrates "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct *by an opposing party*"). No allegations have been made in Adams' motion to support relief under Rule 60(b)(4) or (5).

litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel.  For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel.  This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct.  Such mistakes are more appropriately addressed through malpractice claims.").  *See also McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) ("neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)"); *DeFeo v. Allstate Ins. Co.*, No. 95-244, 1998 WL 328195 (E.D. Pa. June 19, 1998) (carelessness of a litigant or his attorney is not a ground for relief under Rule 60(b)(1)) (citing *Mayfield v. Vanguard Savings & Loan Ass'n*, 1989 WL 106986 *3 (E.D. Pa. Sept. 8, 1989) (citing cases)).

In the case of *In re Subramanian,* 245 Fed. Appx. 111, 117 (3d Cir. 2007)*,* our Court of Appeals stated, in an unreported decision, that actions of counsel constituting "excusable neglect" might be considered grounds to set aside a judgment under Rule 60(b)(1).  Here, however, Adams has not alleged any form of "excusable neglect" on the part of his attorney; rather, he has alleged something more akin to gross negligence.  Such allegations are more properly evaluated under subsection (b)(6).  *See id.* at 117 ("Actions of counsel that constitute 'excusable neglect' are properly considered as a basis to set aside a judgment under Rule 60(b)(1), while actions by counsel that constitute inexcusable 'gross negligence' can be 'exceptional circumstances' justifying relief under Rule 60(b)(6).") (citation omitted).  Accordingly, Adams has not presented any basis for relief under Rule 60(b)(1).

*(B) Newly Discovered Evidence*

Adams appears to be seeking reinstatement of his claims partly on the basis of what he considers to be new evidence. Like subsection (1), subsection (2) of Rule 60 imposes a one-year time limit on a movant seeking relief. Therefore Adams' motion is also untimely under Rule 60(b)(2) insofar as it seeks to void the dismissal of his RICO claims.

Once again, however, there are additional impediments beyond untimeliness which preclude relief under this subsection. When relief from a final judgment is sought on the basis of newly discovered evidence, it must be shown that the new evidence "(1) [is] material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 309 (3d Cir. 2001) (citing *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir.1995)).

Here, Adams' submissions [87-11] consist of the following:

(i) two articles published by the Erie Times News on, respectively, July 13 and November 16, 2005 which, according to Adams, show that DiVecchio essentially won his election by purchasing Oligery's endorsement;

(ii) the affidavit of a confidential "Jane Doe" witness whose identity has already inadvertently been revealed and who purports to opine that Oligery's endorsement of DiVecchio was instrumental in ensuring DiVecchio's electoral victory;

(iii) a document Adams styles "Oligeri Candidate Biography;

(iv) data from the 2005 election;

(v) an October 3, 2011 opinion from the Erie County Court of Common Pleas upholding the District Attorney's decision not to approve Adams' private

      criminal complaint against DiVecchio, Logue, and Agresti premised on alleged violations of Pennsylvania's bribery and RICO laws;

(vi)     letters to Mr. Taggart concerning Adams' prior efforts to move for reconsideration on the federal RICO count; and

(vii)     Adams' book, entitled "Erie County's Dirty Little Secrets," which was published on July 2, 2011.

All of the foregoing submissions appear to be intended primarily as support for Adams' previously dismissed federal RICO count. Specifically, it appears Adams is seeking to use this information to demonstrate an act of bribery on the part of DiVecchio and/or Logue and Agresti that would serve as a predicate act of racketeering under the federal RICO statute.

Having reviewed these materials in their entirety, I find that Adams' newly submitted evidence fails to satisfy the criteria of Rule 60(b)(2). First, much of the evidence, including much of the substance of Adams' July 2, 2011 publication, is essentially cumulative of what was previously in the summary judgment record concerning Adams' claim that DiVecchio won his seat by purchasing the endorsement of Art Oligery.[3]

Second, Adams has failed to demonstrate why much of this evidence, particularly the first four items, could not have been discovered and presented to the Court earlier through the exercise of reasonable diligence. None of these four items is actually "new" in the sense of post-dating our final entry of judgment. And, although Adams' theory as

---

[3] Although the Court noted Plaintiff's submission of evidence on this point, we found it immaterial insofar as Adams' First Amendment claim was concerned. *See Adams v. County of Erie, Pennsylvania*, 2011 WL 4574784 at *23 (acknowledging Adams's evidence concerning the alleged bribe but finding that "it has no material bearing on the matters presently before this Court, as it has nothing to do with Adams' personal allegations of employment discrimination.").

to the Oligery "bribe" was made known to the Court as part of the summary judgment record relative to Adams' §1983 First Amendment claim, no motion was made at that time seeking a revisitation of the previously dismissed RICO counts. More relevantly, no showing has been made as to why these first four evidentiary items could not have been discovered through the exercise of reasonable diligence and presented to the Court when Adams' RICO claim was being actively litigated in 2009.

In any event, however, this Court is not persuaded that the newly discovered evidence likely would have changed the outcome of any of Adams' claims. The appended materials add nothing new or relevant to either Adams' federal §1983 claims or his state law claims. I am similarly unpersuaded that Adams' newly submitted evidence concerning the alleged Oligery bribe would be sufficient to cure the defects previously discussed in connection with Adams' RICO claim. *See generally Adams v. County of Erie, Pennsylvania,* 2009 WL 3087214 (W.D. Pa. Sept. 23, 2009). Among other things, the Court remains unconvinced that Plaintiff can establish a coherent theory of a "pattern of racketeering" that satisfies the continuity prong of the federal RICO statute. Accordingly, I find no basis to revisit my final rulings pursuant to Rule 60(b)(2).

    *(C) Any Other Reason Justifying Relief*

Finally, I consider whether any relief could be available under subsection (b)(6). While Rule 60(b)(6) does not contain an express one-year period of limitations, the courts of this circuit have stated that this provision "may not be used as a catchall to avoid the one-year limitation." *Gambocz v. Ellmyer*, 438 F.2d 915, 917 (3d Cir.1971). *See also Boyd v. Rozum,* 2012 WL 3595301 at *1 (W.D. Pa. Aug. 21, 2012); *Martinez v.*

*Wynder*, Civil Action No. 08-0046, 2010 WL 391476 at *4 (E.D. Pa. Jan. 22, 2010); *Shenkan v. Potter*, 2006 WL 840340, *2 (W.D. Pa. Mar.27, 2006)). "Consequently, a Rule 60(b)(6) motion filed more than a year after final judgment is generally considered untimely unless "extraordinary circumstances" excuse the party's failure to proceed sooner." *See Martinez, supra*, at *4 (citing *Gordon v. Monoson*, 239 Fed. Appx 710, 713 (3d Cir.2007)). I do not find such extraordinary circumstances to be present here.

      Presumably, Adams would argue that he can establish extraordinary circumstances due to the alleged gross negligence and/or mental incompetence of his attorney. In particular, Adams appears to argue that his counsel inexplicably abandoned the state law claims for breach of contract, intentional interference with a contractual relationship, and wrongful discharge, as well as Adams' federal claims premised upon alleged due process violations – claims which Adams believes had merit such that his attorney should have sought summary judgment in Adams' favor. Adams further suggests that he should have prevailed on his First Amendment claim, and he insists his counsel could have, and should have, sought reinstatement of the RICO count.

      There are two problems with Adams' theory. First, it presupposes, without sufficient basis, that Adams' state and federal claims were meritorious and that, but for counsel's incompetence, Adams would have prevailed on them. Insofar as he complains about the manner in which his case was prosecuted before this Court, Adams has not made a sufficient showing that his counsel acted in a grossly negligent or incompetent manner as might justify relief under Rule 60(b)(6).

To the extent that Adams challenges his counsel's actions in abandoning the state law claims and/or the federal due process claim, it should be noted that this occurred during argument on the Defendants' pending motion for summary judgment, wherein the following discussion occurred following lengthy debate on the First Amendment claim:

> THE COURT:  I don't see a contract here, what's the contract?
>
> MR. TAGGART:  Sadly, under the state of Pennsylvania law as of today, it isn't there.
>
> THE COURT:  All right, so we can get rid of the contract claim.  And with it goes the tortious interference with contract.  I don't see a procedural due process claim?
>
> MR. TAGGART:  The way it's gone so far, I agree with you.
>
> THE COURT:  All right.  Isn't this, if it's anything, if it survives – however this case is resolved, isn't it true that the only claim you're really pressing, based upon the discussion we just had a second ago and the discussion we had over the last several minutes, is a First Amendment claim, a federal claim?
>
> MR. TAGGART:  Yes.  But it's solid.  …

(Tr. of Oral Arg. On Mot. for Summ. Judg. Held 7/15/10 [95] at pp. 49-50.)

As the foregoing excerpt illustrates, it was this Court's view that Adam's strongest potential cause of action was his First Amendment claim premised upon alleged political discrimination.  Had it survived, that claim would have afforded Adams potential relief in the form of compensatory and punitive damages as well as attorney fees.  Summary judgment was entered in favor of the Defendants only after this Court undertook an extensive review of the voluminous evidentiary record and applicable law.

To the extent Adams is challenging our entry of judgment on his First Amendment employment discrimination claim, Adams' arguments in favor of reconsideration are basically just claims of legal error.  However, "legal error does not by itself warrant the application of Rule 60(b) ... since legal error can usually be corrected on appeal, that factor without more does not justify the granting of relief under Rule 60(b)(6) ... [and] only extraordinary, and special circumstances" justify relief under Rule 60(b)(6). *Pridgen v. Shannon*, 380 F.3d 721, 728 (3d Cir.2004).  The rule "must be applied [s]ubject to the propositions that the finality of judgments is a sound principle that should not lightly be cast aside, [and] that clause (6) is not a substitute for appeal." *Kock v. Government of the Virgin Islands*, 811 F.2d 240, 246 (3d Cir.1987); *Martinez*, supra, at *6.

Adams' other non-RICO claims were conceded by Mr. Taggart only after the benefit of extensive discovery and thorough briefing at the summary judgment stage. The record supports a finding that Mr. Taggart believed he had no good faith basis for pursuing those claims, but it does not support a finding of gross incompetence sufficient to support relief under Rule 60(b)(6).[4]

---

[4] Notably, Adams' belief that he had a viable breach of contract claim is premised upon the case of *Branti v. Finkel,* 455 U.S. 507 (1980).  While that case addresses the rights of assistant public defenders under the First and Fourteenth Amendments to be protected from discharge based solely on their political beliefs, it does not address contractual rights under state law, nor does it conclusively settle the rights of First Assistant Public Defenders such as Adams who arguably had policy-making authority.  The issue whether Adams was subject to the rule of *Branti* was disputed by Defendants for purposes of the First Amendment claim, inasmuch as Defendants argued that Adams was a policy-making official.  This Court ultimately decided that it did not need to resolve that issue for purposes of the summary judgment ruling on the First Amendment claim because we found, as a matter of law, that Adams could not establish that his protected political status was a substantial or motivating factor in his termination.  *See Adams,* 2011 WL 4574784 at *6-7.  Suffice to say, however, that we do not read *Branti* as materially supporting Adams' breach of contract claim under Pennsylvania law.  Adams has not offered any substantial basis to support

The second problem for Adams is that relief under Rule 60(b)(6), when premised upon the gross negligence of counsel, necessarily requires the movant-client to show that he or she acted diligently to redress the problem.  *See, e.g., In re Subramanian*, Civil Action No. 05-5098 (MLC), 2006 WL 1645018 at *12 (D.N.J.  June 14, 2006) (Under Rule 60(b)(6), a party may seek relief if the party's attorney displayed "neglect so gross that it is inexcusable"; however, to justify relief under subsection (6), "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."); *Thorpe v. Luisi*, No. 00-3144, 2005 WL 1863671 at *3 (S.D.N.Y.  Aug. 4, 2005) (stating that, while gross negligence of attorneys has occasionally served as grounds for relief from judgment under Rule 60(b)(6), the attorney's gross negligence will be imputed to the client barring evidence of "diligent efforts by [the client] to induce him to fulfill his duty.").

Here, Adams contends that he placed trust in his attorney and that he was led to believe that he had a strong case, only to discover after the fact that summary judgment had been granted in favor of the defense on his First Amendment claim, and all of his remaining claims had been abandoned by Mr. Taggart without his consent.  Adams also complains that he was led, falsely, to believe that Mr. Taggart was going to seek reconsideration of the RICO claim dismissal, which (according to Adams) could successfully occur only if Mr. Taggart asserted to the Court his own failings.  In short, Adams attributes all of his adverse outcomes to his attorney's incompetence, allegedly brought on by mental illness.

---

the conclusion that his wrongful discharge claim or procedural due process claims were wrongfully conceded.

However, according to Adams' own submissions, he became aware of these problems as early as September 2, 2008, the day that DiVecchio was deposed, when Mr. Taggart supposedly exhibited "stroke-like symptoms." (See Pl.'s Omnibus Suppl. [94] at p. 8.) Plaintiff asserts that, soon thereafter, he became aware that Mr. Taggart was on medication and was suffering from anxiety to the point that he had reduced his caffeine intake, was taking longer lunches, and had requested Adams not be present for court appearances. (Id. at p. 9.) Despite Adams' professed observations about his lawyers' mental health issues, he did not fire his attorney or bring the matter before this Court or any other authority during the pendency of the case. Instead, he acknowledges that he deferred to Mr. Taggart even as of his March 30, 2010 deposition, and only began to challenge Mr. Taggart concerning the RICO count after pursuing his own independent RICO research in February 2011. (Omnibus Suppl. at p. 26-27.)

Essentially, Adams argues that he should be excused from belatedly seeking reconsideration of his RICO claim because he was duped by an incompetent lawyer. Yet Adams essentially admits that he placed blind trust in his attorney, did not review court filings, did not attend court proceedings, did not maintain a copy of his file, and generally did not know the status of his claims due to his lack of access to the Court's CM/ECF system. However, this complacency bespeaks a lack of diligence on Adams' part which precludes relief under Rule 60(b)(6). *See, e.g., Nelson v. City Colleges of Chicago,* 962 F.2d 754, 756 (7th Cir. 1992) (client has duty to diligently monitor developments in litigation); *DeFeo, supra*, 1998 WL 328195 at *5 ("That a party claims to have been uninformed about the status of proceedings in a pending case does not

equate with gross negligence of counsel or denote an absence of fault by the party."); *Mayfield v. Vanguard Savings & Loan Ass'n*, 1989 WL 106986 *4 (E.D. Pa. Sept. 8, 1989) (the fact that a party was personally uninformed of the state of matters before the court will not support relief under Rule 60(b)(6)). This is especially true in light of Adams' status as a licensed attorney experienced in criminal litigation.

Courts in this circuit have considered the following factors in determining whether extraordinary circumstances exist that would warrant the reopening of a case:

> (1) The general desirability that a final judgment should not be lightly disturbed; (2) the fact that Rule 60(b)'s limited avenue for relief is not intended to be a substitute for an appeal; (3) the fact that Rule 60(b) should be liberally construed for the purpose of doing substantial justice; (4) the timeliness of the motion; (5) any intervening equities which make it inequitable to grant relief; (6) any other factor that is relevant to the justice of the order under attack; and (7) where relief is sought from a judgment of dismissal where there has been no consideration of the merits, whether there is merit in the defense or claim.

*See Lasky v. Continental Prod. Corp.,* 804 F.2d 250, 256 & n. 10 (3d Cir.1986); *Datto v. Harrison*, Civil Action Nos. 09-2064, 09-2549, 2011 WL 5865962 at *9 (E.D. Pa. Nov. 22, 2011).

The first factor we consider is the general desirability of not lightly disturbing a judgment or ruling intended to be final. To that end, it should be noted that this case was litigated to a final judgment after four years of pleadings practice and extensive discovery. In the process, this Court issued lengthy memorandum opinions relative to Adams' federal RICO claim and Section 1983 employment discrimination claim. Given this, the general desirability that a final judgment should not lightly be disturbed weighs heavily against Rule 60(b) relief.

The second factor cautions against the use of Rule 60 as a substitute for appeal. To the extent Adams is challenging this Court's prior rulings relative to his First Amendment and RICO claims, this factor also counsels against Rule 60 relief.

Factors three and six relate generally to avoiding injustice if the Court's final rulings are permitted to stand. *See Datto*, 2011 WL 5865962 at *9. Having undertaken a review of Adams' submissions in support of his omnibus motion, I do not agree with his underlying assumption that the submitted materials support reinstatement of his claims. Accordingly, these factors do not favor a finding of exceptional circumstances warranting Rule 60(b)(6) relief.

The fourth factor, the timeliness *vel non* of the motion, also does not favor the granting of Rule 60 relief, particularly as it relates to Adams' RICO count, which is the thrust of his motion. The remaining factors are inapplicable, and therefore do not affect my analysis. On balance, I find that Adams has failed to demonstrate the type of "extraordinary circumstances" that would warrant relief under Rule 60(b)(6).

## IV.   CONCLUSION

Because my review of Plaintiff's motion reveals no basis under the foregoing standards for revisiting my final orders relative to Plaintiff's various claims, his motion must be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.J. ADAMS, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07-cv-316-SJM |
| ) | |
| v. ) | |
| ) | |
| THE COUNTY OF ERIE, ) | |
| PENNSYLVANIA, *et al,* ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

AND NOW, to wit, this 27th Day of September, 2012, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the Omnibus Motion filed by Plaintiff A.J. Adams shall be, and hereby is, DENIED.

    s/    Sean J. McLaughlin

    SEAN J. McLAUGHLIN
    United States District Judge

Cm:   All parties of record.